**BILLY J. WILLIAMS, OSB #901366**
United States Attorney
District of Oregon
**THOMAS S. RATCLIFFE, ILSB #6243708**
Assistant United States Attorney
Thomas.Ratcliffe@usdoj.gov
1000 SW Third Ave., Suite 600
Portland, OR 97204-2902
Telephone: (503)727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 3:17-CR-44-BR |
| v. | GOVERNMENT'S SENTENCING MEMORANDUM |
| JARED DALE GILLESPIE, | Sentencing: Jan. 15, 2019 at 10:00 a.m. |

The United States of America, by and through Billy J. Williams, United States Attorney for the District of Oregon, and Thomas S. Ratcliffe, Assistant United States Attorney, respectfully submits the following memorandum in support of the Government's request for a sentence of 121 months of imprisonment, followed by a three-year term of supervised release.

I.  **PLEA AND PLEA AGREEMENT**

On January 25, 2018, the defendant pled guilty to Count 5 of the Superseding Indictment, charging him with possessing fentanyl with the intent to distribute it, in violation of Title 21 of the United States Code, Section 841(b)(1)(C).

///

///

A.  **Chapter Two – Offense Conduct**

The parties agree that the defendant's base offense level pursuant U.S.S.G. § 2D1.1(c)(3) is 34 because he is responsible for more than 11 *kilograms* of fentanyl and 1.65 kilograms of MDMA.  PSR ¶ 48.

B.  **Chapter Three – Adjustments**

1.  **Acceptance of Responsibility**

The parties agree that the defendant has met the requirements for application of a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.  PSR ¶¶ 55-56.  This brings his total offense level to 31.

C.  **Chapter Four - Criminal History**

The defendant has one prior conviction as an adult, as described in the Presentence Report.  PSR ¶ 60.  He was on state supervision for that crime at the time of his conduct in this case.  PSR ¶ 62.  As a result, the defendant is in Criminal History Category III.  PSR ¶ 63.

D.  **Forfeiture**

The Court issued a preliminary/final order of forfeiture on January 25, 2018.  Dkt. #52.  The order was directed at an agreed $75,000 money judgment.  The government asks the Court to pronounce forfeiture for the money judgment at sentencing, and to include the forfeiture in the judgment and commitment order.

II.  **FACTUAL BACKGROUND**

The detailed PSR correctly summarizes the complex facts of this case, including the results of searches conducted at locations connected to the defendant and his friends.  PSR ¶¶ 15-43.  The most important facts relate to the defendant's use of the Dark Web to purchase fentanyl and MDMA that he then distributed in Oregon.

Using an account on Alpha Bay, the defendant purchased high quality counterfeit oxycodone pills from a vendor in Salt Lake City and had those packages sent to a nominee's private P.O. box in Portland.  The investigation revealed that the defendant bought 86,000 of these counterfeit oxycodone pills, which the defendant knew were actually made of fentanyl.  The defendant paid for the pills by sending $294,000 in Bitcoin to the vendor in Salt Lake City.  The government seized 16,000 of those pills – packaged for shipment to Portland with the defendant's nominee's P.O. box on the label – when the Salt Lake City vendor was arrested by HSI.  The defendant also twice bought MDMA from the Netherlands, which HSI intercepted.

Then, just before his arrest in our case, the defendant received a package with a small amount of fentanyl (8.76 grams) from Hong Kong.  This was *after* he learned that his Salt Lake City supplier had been arrested.  Forensic evidence from the defendant's computer shows he was planning to use that fentanyl, along with a $1,900 pill press that he ordered, to begin manufacturing his own counterfeit oxycodone.  Computer forensic results showed the defendant searching "how much fentanyl to press into Oxy."  The defendant was also searching the internet for ways to manufacture "MBox 30" oxycodone pills using fentanyl.  Those are the same kinds of counterfeit oxycodone pills that the defendant purchased from Salt Lake City.  The pill press that the defendant ordered also had a die to stamp "30" and "M" on pills.  The defendant was arrested before he began manufacturing his own counterfeit oxycodone pills, but not before he distributed roughly 70,000 fentanyl-based counterfeit oxycodone pills in Oregon.

The government asks the Court to sentence the defendant to the high end of the applicable guideline range for two reasons.  First, the defendant is responsible for a staggering amount of fentanyl: 11 kilograms.  That is *27 times* more than the 400 grams necessary to trigger the 10-year mandatory minimum term of imprisonment under 21 U.S.C. Section

**Government's Sentencing Memorandum:** *U.S. v. Gillespie,* **3:17-CR-44-BR**            **Page 3**

841(b)(1)(A)(vi).  The government elected not to charge the defendant with a mandatory minimum crime related to his fentanyl offenses, knowing that the guidelines would properly capture the seriousness of the defendant's conduct.  However, a recent change in sentencing laws means the defendant will receive an unintended benefit from the government's decision to rely on the guidelines instead of a mandatory minimum.  Under the First Step Act of 2018, which took effect on December 21, 2018, the defendant will be eligible for significant incarceration time credits that may reduce his term of imprisonment by *years*.  *See* 18 U.S.C. Section 3632(d)(4)(A) (describing time credits that can add up to 15 days for every 30 days of incarceration).  The defendant would not have been eligible for those time credits if he had been convicted of a fentanyl offense carrying a mandatory minimum sentence.  *See* 18 U.S.C. Section 3632(d)(4)(D)(lxvi) (exempting defendants who are convicted under 21 U.S.C. Sections 841(b)(1)(A)(vi), 841(b)(1)(B)(vi), 960(b)(1)(F), or 960(b)(2)(F) – i.e., the provisions requiring 10-year and five-year mandatory minimums for the manufacture, distribution, possession with intent to distribute, or importation of more than 400 grams of fentanyl, or more than 40 grams of fentanyl, respectively).  The defendant will likely serve *substantially less* time in prison than whatever the Court orders in this case, even though just three weeks ago Congress and the President sought to prevent fentanyl traffickers like him from being released early under the revised sentencing laws.  In light of this windfall for the defendant, the government asks the Court to impose the 121-month sentence called for at the top of the adjusted guidelines range.

      Second, the defendant deserves a sentence at the high end of the adjusted guideline range because of the grave risk he created by distributing fentanyl as seemingly safe oxycodone pills.  Instead of 30mg oxycodone pills, the defendant's customers unwittingly ingested fentanyl – a powerful synthetic opioid analgesic that is similar to morphine but 50 to 100 times more potent.

*See* National Institute on Drug Abuse, Drug Facts: Fentanyl (June 2016), available at https://www.drugabuse.gov/publications/drugfacts/fentanyl.  The Sentencing Commission recently amended the guidelines to account for the risks created by fentanyl masquerading as another drug.  Section 2D1.1(b)(13) of the 2018 guidelines manual includes a four-level enhancement for defendants who "knowingly misrepresent or knowingly market[] as another substance a mixture or substance containing" fentanyl or a fentanyl analogue.

The government recognizes that this recent amendment cannot properly be applied to the defendant, due to *ex post facto* principles.  Nor is such an enhancement contemplated by the plea agreement in this case.  However, when assessing the defendant's request for a non-guideline sentence, the government urges the Court to consider the important policy considerations highlighted by the Sentencing Commission's recent amendment.  The government believes the grave risks created by the defendant's distribution of 70,000 counterfeit oxycodone pills made of fentanyl justify the Court imposing a sentence of 121 months of imprisonment, or a similar sentence above the 97-month minimum of the adjusted guideline range in this case.

### III.   CONCLUSION AND RECOMMENDATION

Based on the reasons set forth above, and the plea agreement entered into by the parties, the government asks the Court to impose a sentence of 121 months of imprisonment, followed by a three-year term of supervised release.  The government also asks the Court impose the $100 special assessment.

The government submits that, under the facts of this case, a sentence of 121 months of imprisonment, is sufficient, will promote respect for the law, and provide just punishment for this defendant as a result of his offense.  Such a sentence would recognize the defendant's role in this offense, provide adequate deterrence to criminal conduct, protect the public, and provide the

defendant with an opportunity for educational or vocational training, medical care, or other correctional treatment.  A sentence of 121 months of imprisonment, coupled with a three-year term of supervised release, and a $100 special assessment, satisfies the requirement of 18 U.S.C. § 3553(a) as a "sentence sufficient, but not greater than necessary" to meet the purposes of Section 3553(a)(2).

    Dated this 9th day of January 2019.

    Respectfully submitted,

    BILLY J. WILLIAMS, OSB #901366
    United States Attorney

    */s/ Thomas S. Ratcliffe*
    THOMAS S. RATCLIFFE, ILSB #6243708
    Assistant United States Attorney